UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JOHN WUNSTELL ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 10-2543** |
| **BP, PLC ET AL.** | **SECTION "H"** |

### ORDER AND REASONS

Before the Court are a Motion for Summary Judgment (Doc. 119) and Motion to Exclude Expert Testimony of Dr. Judd Shellito (Doc. 116) filed by Defendants, BP America Production Company, BP Exploration & Production, Inc., BP p.l.c. (collectively "BP"). For the foregoing reasons, the Motions are **GRANTED**. Oral argument is **CANCELED**.

### BACKGROUND

This case is one among the "B3 bundle" of cases arising out of the *Deepwater Horizon* oil spill.[1] This bundle comprises "claims for personal injury and wrongful death due to exposure to oil and/or other chemicals used during the oil spill response (e.g., dispersant)."[2] These cases were originally part of a

---

[1] *See In re:* Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010, No. 10-md-02179, R. Doc. 26924 at 1 (E.D. La. Feb. 23, 2021).
[2] *Id.*

1

multidistrict litigation ("MDL") pending in the Eastern District of Louisiana before Judge Barbier. During this MDL, Judge Barbier approved the *Deepwater Horizon* Medical Benefits Class Action Settlement Agreement, but the B3 plaintiffs either opted out of this agreement or were excluded from its class definition.[3] Subsequently, Judge Barbier severed the B3 cases from the MDL to be reallocated among the judges of this Court. This case was eventually reassigned to Section H.

Plaintiff John Wunstell worked in the oil spill response as a captain in the Vessels of Opportunity program. He captained his vessel to assist in controlled burns of the crude oil floating on the surface of the water in the Gulf of Mexico. During the burns, his boat was tethered to a burn and other burn teams were working in the waters around him. Plaintiff alleges that dispersants were also sprayed from the air onto his vessel during the clean-up. During his time on the burn team, Plaintiff alleges that he became seriously ill and was airlifted from his vessel in the Gulf of Mexico to West Jefferson Hospital by helicopter. He experienced trouble breathing, chest pain, increased heart rate, headaches, nausea, sore throat, body aches, abdominal pain, eye pain, and rashes. When he arrived at the hospital, he alleges that medical personnel in hazmat suits stripped and hosed him off.

Plaintiff has brought negligence claims under general maritime law against BP for the damages he sustained while working as part of the burn team. Specifically, Plaintiff alleges that the exposure to toxins and fumes caused bronchitis and rhinitis. He also alleges mental damages as result of the

---

[3] *Id.* at 2 n.3.

experience, including post-traumatic stress disorder, major depressive disorder, and somatic symptom disorder.

Now before the Court are two motions filed by Defendant BP. BP seeks to exclude Plaintiff's expert, Dr. Judd Shellito, and moves for summary judgment dismissal of his claims against it.[4] The Court will consider each Motion in turn.

## LEGAL STANDARD

### A. *Daubert* Motion

Federal Rule of Evidence 702 provides that a witness who is qualified as an expert may testify if: (1) the expert's "specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue"; (2) the expert's testimony "is based on sufficient facts or data"; (3) the expert's testimony "is the product of reliable principles and methods"; and (4) the principles and methods employed by the expert have been reliably applied to the facts of the case. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the U.S. Supreme Court held that Rule 702 "requires the district court to act as a gatekeeper to ensure that 'any and all scientific testimony or evidence admitted is not only relevant, but reliable.'"[5] All types of expert testimony are subject to this gatekeeping.[6] The party offering the expert testimony bears the

---

[4] BP has also moved to exclude Plaintiff's psychology expert Beverly Howze (Doc. 117). Because this Court finds that summary judgment is warranted without consideration of Howze's opinion, it need not address that motion.

[5] Metrejean v. REC Marine Logistics, LLC, No. 08-5049, 2009 WL 3062622, at *1 (E.D. La. Sept. 21, 2009) (quoting Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 589 (1993)).

[6] *See* Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147 (1999).

burden of proving its reliability and relevance by a preponderance of the evidence.[7]

The reliability of expert testimony "is determined by assessing whether the reasoning or methodology underlying the testimony is scientifically valid."[8] The Court may consider several nonexclusive factors in determining reliability, including: (1) whether the technique has been tested, (2) whether the technique has been subject to peer review and publication, (3) the technique's potential error rate, (4) the existence and maintenance of standards controlling the technique's operation, and (5) whether the technique is generally accepted in the relevant scientific community.[9] Granted, the reliability analysis is a flexible one and "not every *Daubert* factor will be applicable in every situation."[10] As the gatekeeper of expert testimony, this Court enjoys broad discretion in determining admissibility.[11]

## B. Motion for Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[12] A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[13]

---

[7] *See* Moore v. Ashland Chem. Co., 151 F.3d 269, 276 (5th Cir. 1998).
[8] Knight v. Kirby Inland Marine, Inc., 482 F.3d 347, 352 (5th Cir. 2007).
[9] *See* Burleson v. Tex. Dep't of Crim. Just., 393 F.3d 577, 584 (5th Cir. 2004).
[10] Guy v. Crown Equip. Corp., 394 F.3d 320, 325 (5th Cir. 2004).
[11] *See* Wellogix, Inc. v. Accenture, L.L.P., 716 F.3d 867, 881 (5th Cir. 2013).
[12] Sherman v. Hallbauer, 455 F.2d 1236, 1241 (5th Cir. 1972).
[13] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[14] "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[15] Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[16] "In response to a properly supported motion for summary judgment, the non-movant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the non-movant on all issues as to which the non-movant would bear the burden of proof at trial."[17] "We do not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[18] Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[19]

---

[14] Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 532 (5th Cir. 1997).
[15] Engstrom v. First Nat'l Bank of Eagle Lake, 47 F.3d 1459, 1462 (5th Cir. 1995).
[16] Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).
[17] John v. Deep E. Tex. Reg. Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).
[18] Badon v. R J R Nabisco, Inc., 224 F.3d 382, 394 (5th Cir. 2000) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)).
[19] Boudreaux v. Banctec, Inc., 366 F. Supp. 2d 425, 430 (E.D. La. 2005).

## LAW AND ANALYSIS

"B3 plaintiffs must prove that the legal cause of the claimed injury or illness is exposure to oil or other chemicals used during the response."[20] "The plaintiff's burden with respect to causation in a toxic tort case involves proof of both general causation and specific causation."[21] "General causation is whether a substance is capable of causing a particular injury or condition in the general population, while specific causation is whether a substance caused a particular individual's injury."[22]

BP moves to exclude the opinion and testimony of Plaintiff's causation expert, Dr. Judd Shellito. Dr. Shellito, a pulmonologist, is Plaintiff's only expert on the causation of his physical injuries.[23] He opines that Plaintiff suffered from irritant rhinitis and bronchitis as a result of oil and dispersant exposure. BP argues that Dr. Shellito's opinions on both general and specific causation are unreliable and inadmissible. This Court agrees.

As to his general causation opinion, it is well-settled in the Fifth Circuit that "[s]cientific knowledge of the harmful level of exposure to a chemical" is a "minimal fact[] necessary to sustain the plaintiffs' burden in a toxic tort case."[24]

---

[20] *In re* Oil Spill by Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010, MDL NO. 2179, 2021 WL 6053613, at *11 (E.D. La. Apr. 1, 2021).

[21] Davis v. BP Expl. & Prod., Inc., No. 17-4664, 2022 WL 2789027, at *1 (E.D. La. July 15, 2022).

[22] Knight v. Kirby Inland Marine Inc., 482 F.3d 347, 351 (5th Cir. 2007) (internal quotation marks omitted).

[23] Plaintiff also presents an expert on Plaintiffs' emotional damages, Beverly Howze.

[24] Allen v. Pennsylvania Eng'g Corp., 102 F.3d 194, 199 (5th Cir. 1996). *See, e.g.,* Johns v. BP Expl. & Prod. Inc., No. 17-3304, 2022 WL 1811088 (E.D. La. June 2, 2022) (Ashe, J.); Coleman v. BP Expl. & Prod., Inc., No. 17-4158, 2022 WL 2314400 (E.D. La. June 28, 2022) (Vance, J.); *McIntosh*, 2022 WL 2342480 (Barbier, J.); Harrison v. BP Expl. & Prod. Inc., No. 17-4346, 2022 WL 2390733 (E.D. La. July 1, 2022) (Morgan, J.); *Davis*, 2022 WL 2789027 (Zainey, J.); Turner v. BP Expl. & Prod. Inc., No. CV 17-3225, 2022 WL 2967441 (E.D. La.

"[T]he fundamental question in [the] general causation inquiry is whether the chemicals, weathered oil, and dispersants to which [plaintiff] alleges he was exposed can cause the conditions he alleges."[25] Dr. Shellito does not identify a level of exposure to a relevant chemical that can cause rhinitis and bronchitis. Dr. Shellito relied only on the material safety data sheets ("MSDS") of "various dispersants" used in the clean-up of the oil spill to conclude that "burning oil and airborne dispersants are respiratory irritants and have the potential to cause irritant injury of both the upper and the lower respiratory tract."[26] Dr. Shellito does not identify any particular chemical that can cause the complained of injuries or a harmful dose. Further, his reliance only on the MSDS is insufficient to form a reliable general causation opinion.[27]

In addition, Dr. Shellito fails to provide a reliable opinion on specific causation. Dr. Shellito's opinion that Plaintiff suffered from temporary rhinitis and bronchitis is supported only by Plaintiff's "history of inhalation exposure" to oil and dispersants and "his complaints of epistaxis and shortness of

---

July 27, 2022) (Africk, J.); Reed v. BP Expl. & Prod., Inc., No. CV 17-3603, 2022 WL 3099925 (E.D. La. Aug. 4, 2022) (Milazzo, J.); Baggett v. BP Expl. & Prod., No. 17-3030, 2022 WL 4242521 (E.D. La. Sept. 13, 2022) (Guidry, J.); Hill v. BP Expl. & Prod., No. 17-3252, 2022 WL 4534747 (E.D. La. Sept. 28, 2022) (Vitter, J.); Moore v. BP Expl. & Prod., Inc., No. CV 17-4456, 2022 WL 3594631, at *10 (E.D. La. Aug. 23, 2022) (Vance, J.); Cantillo v. BP Expl. & Prod., No. 17-3226, R. Doc. 35 (E.D. La. Aug. 5, 2022) (Barbier, J.); Seay v. BP Expl. & Prod., No. 17-4244, R. Doc. 53 (E.D. La. Aug. 5, 2022) (Barbier, J.); Yarbrough v. BP Expl. & Prod., No. 17-4292, R. Doc. 53 (E.D. La. Aug. 5, 2022) (Barbier, J.); Magee v. BP Expl. & Prod., No. 17-4399, R. Doc. 54 (E.D. La. Aug. 8, 2022) (Ashe, J.); McMillan v. BP Expl. & Prod., No. 17-3396, R. Doc. 61 (E.D. La. Sept. 14, 2022) (Guidry, J.).

[25] Bass v. BP Expl. & Prod., No. 17-3037, 2022 WL 2986276, at *4 (E.D. La. July 28, 2022) (Morgan, J.).

[26] Doc. 116-2.

[27] See Grant v. BP Expl. & Prod., Inc., No. CV 17-4334, 2022 WL 2467682, at *9 (E.D. La. July 6, 2022) ("Court finds that he lacks sufficient facts on both the composition of the substances at issue and their toxicity to provide a reliable opinion on general causation.").

breath."[28] Again, Dr. Shellito fails to establish Plaintiff's exposure to any particular chemical or harmful dose. In addition, none of the objective testing performed on Plaintiff supports a finding of any respiratory issue. Plaintiff's chest x-ray was clear, and his decreased pulmonary function was attributed to his obesity. Dr. Shellito's physical examination of Plaintiff revealed no crackles or wheezes with exhalation, no throat inflammation, and no nasal blockage. Accordingly, this Court finds Dr. Shellito's causation opinions to be unreliable, and BP's Motion to Exclude his causation testimony is granted.

Having excluded Plaintiff's only expert on the causation of his physical injuries, this Court finds that it must also grant BP's Motion for Summary Judgment. "In a toxic torts case, a plaintiff must rely on expert testimony to prove his medical diagnosis and causation."[29] Plaintiff argues that he does not need expert testimony to prove his acute, transient medical conditions because these conditions are within the knowledge of lay persons. However, the cases Plaintiff relies on to make this argument address the necessity of an expert to prove *specific* causation.[30] Plaintiff does not cite to any case holding that expert testimony is not required as to general causation. Accordingly, at a minimum, Plaintiff must present expert testimony on general causation. Because he

---

[28] Doc. 116-2.

[29] Banegas v. BP Expl. & Prod., Inc., No. CV 17-7429, 2019 WL 424683, at *2 (E.D. La. Feb. 4, 2019). *See* Seaman v. Seacor Marine L.L.C., 326 Fed. Appx. 721, 729 (5th Cir. 2009) (stating that "without admissible expert evidence in this toxic-tort case, Seaman cannot prove causation"); Guidry v. Dow Chem. Co., No. CV 19-12233, 2021 WL 4460505, at *2 (E.D. La. Sept. 29, 2021) ("In toxic tort cases such as this one, the Fifth Circuit has typically required expert testimony to prove causation. This requirement certainly applies to general causation but is less clear as applied to specific causation.").

[30] *See* Brown v. BP Expl. & Prod., Inc., No. CV 17-3516, 2023 WL 2526974, at *2 (E.D. La. Mar. 15, 2023) ("[T]he question before the Court is whether expert evidence of specific causation is required.").

8

cannot, he cannot prove that he suffered bronchitis and rhinitis as a result of his involvement in the clean-up of the oil spill.

In addition, because Plaintiff cannot prove his physical injury, he also cannot succeed on his claims for mental damages. Under general maritime law, a plaintiff can only recover for emotional injury if there is "some physical contact."[31] "Moreover, there must be a causal relationship between the impact and the injury: the emotional injury must 'result[ ] from' the physical contact."[32] "As the exclusion of [Dr. Shellito's] report prevents [Plaintiff] from proving his physical injury claims, he cannot show a predicate physical injury to support an emotional distress claim."[33] In addition, Plaintiff cannot bring a claim for mental damages based on "what he saw."[34]

Finally, this Court rejects Plaintiff's argument that he can succeed on a claim for mental damages under a "zone-of-danger" theory. First, the Fifth Circuit has not expressly held that zone-of-danger claims are cognizable under maritime law.[35] That said, "[i]n non-maritime cases where such a claim has been allowed, it has been necessary for a plaintiff to plausibly allege that he was at immediate risk of physical harm."[36] A plaintiff is objectively within the zone of danger if he "(1) was at the same location where people got injured by the alleged negligent conduct . . .; (2) could not leave the dangerous area . . . ;

---

[31] Plaisance v. Texaco, Inc., 966 F.2d 166, 168 (5th Cir. 1992).
[32] *In re* Deepwater Horizon, 841 F. App'x 675, 678 (5th Cir. 2021) (quoting Ainsworth v. Penrod Drilling Corp., 972 F.2d 546, 547 (5th Cir. 1992)).
[33] Walker v. BP Expl. & Prod. Inc., No. CV 17-3012, 2022 WL 17987118, at *12 (E.D. La. Dec. 29, 2022) (Africk, J.).
[34] *In re Deepwater Horizon,* 841 F. App'x at 678.
[35] *Id.*
[36] *Id.* at 678–79.

9

or (3) experienced a near-miss collision."[37] Plaintiff argues that he satisfies this test because he was in a vessel tethered to the burns and could not leave the dangerous area. He points out that others in the area also got sick during the oil burns.

The Fifth Circuit has rejected more compelling arguments. In *In re Deepwater Horizon*, the court held that the plaintiffs had not alleged a zone-of-danger claim when they came upon the immediate aftermath of the Deepwater Horizon rig explosion, were under threat of subsequent explosions, felt extreme heat from the burning rig, and "felt and heard deep rumbling sounds coming from deep below the surface of the water."[38] The court held that "the plaintiff must be in the same location as the accident and face immediate risk of harm to satisfy the zone-of-danger test."[39] Accordingly, Plaintiff has not presented facts sufficient to sustain such a claim.[40]

## CONCLUSION

For the foregoing reasons, BP's Motions are **GRANTED**. Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

---

[37] Prest v. BP Expl. & Prod. Inc., No. CV 17-3409, 2022 WL 16832820, at *6 (E.D. La. Nov. 9, 2022).
[38] *In re Deepwater Horizon,* 841 F. App'x at 679.
[39] *Id.*
[40] *See also Prest*, 2022 WL 16832820, at *6 (rejecting zone of danger argument where plaintiff "worked cleaning up oil on or near the coast (many miles from the Deepwater Horizon accident site) and began work a few weeks after the initial explosion.").

New Orleans, Louisiana this 5th day of May, 2023.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**